UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SMITH M. MOORE,                                                Case No. 1:20-cv-811

    Plaintiff,                                                                    HON.

v.

WESTERN MICHIGAN UNIVERSITY,

    Defendant.
_____/

Stephen R. Drew (P24323)
Adam C. Sturdivant (P72285)
DREW COOPER & ANDING
Attorneys for Plaintiff
80 Ottawa Avenue NW, Suite 200
Grand Rapids, Michigan 49503
Phone: (616) 454-8300
E-mail: sdrew@dca-lawyers.com
E-mail: asturdivant@dca-lawyers.com
_____/

**COMPLAINT AND JURY DEMAND**

    Plaintiff, Smith M. Moore, by and through his attorneys, DREW COOPER & ANDING, states as follows:

## JURISDICTION

1. This action arises pursuant to 42 U.S.C. § 1981, the Civil Rights Act of 1966, and 42 U.S.C. § 1988. Jurisdiction is specifically conferred on this Court by the aforementioned statutory provisions.

2. The jurisdiction of the Court is further invoked pursuant to 28 U.S.C. §§ 2201 and 2202; 28 U.S.C. §1343; and 28 U.S.C. §1367 (supplemental jurisdiction – racial discrimination and hostile work environment pursuant to Michigan's Elliott-Larsen Civil Rights Act).

3. The unlawful employment practices alleged below were committed within the Western District of the State of Michigan. Venue is proper pursuant to 28 U.S.C. § 1391.

4. Plaintiff has a Charge of Discrimination pending with the Michigan Department of Civil Rights (MDCR) and/or the Equal Employment Opportunity Commission (EEOC) and has not yet received his Notice of Right to Sue regarding the aforementioned claims. Plaintiff will seek to amend this Complaint to include violations of Title VII. Equitable and other relief are also sought under the aforementioned statutory provisions.

## PARTIES

5. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

6. Plaintiff, Smith M. Moore, is an African American male and a citizen of the United States and the State of Michigan, and resides in the City of Portage, County of Kalamazoo, which is within the territorial limits of the United States District Court for the Western District of Michigan. Plaintiff Moore was at all relevant times an employee of Defendant Western Michigan University.

7. Defendant Western Michigan University is a public university conducting business in the County of Kalamazoo in the state of Michigan, which is within the territorial limits of the United States District Court for the Western District of Michigan. Defendant Western Michigan University was at all relevant times the employer of Plaintiff Smith M. Moore.

**STATEMENT OF FACTS, CLAIMS, AND VIOLATIONS**

8. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

9. Plaintiff Smith M. Moore began employment with Defendant Western Michigan University (WMU) on or about April 24, 2004, as a Catering Manager.

10. In 2012, Moore was promoted to Director of Event Services and Catering.

11. As Director, Moore oversees all reservations and events at the Bernhard Student Center located on WMU's campus. The Bernhard Center serves as the WMU student center providing the campus community with student services, facilities, programs, activities, and events.

12. During all relevant times, Mitchell Beare was the Assistant Director of Operations at WMU.

13. During Plaintiff's employment with Defendant WMU, Moore and other WMU employees have observed Beare (who is a Caucasian male) repeatedly act in racist, discriminatory, and demeaning ways toward African American students and other students of color.

14. When events were being planned for African American student group events, Beare would complain about the scheduling and refer to them in a derogatory manner as "those groups."

15. Once "those groups" were identified by Beare, other discriminatory behavior would follow--- towards the students, and towards Plaintiff Moore.

16. Beare had a practice of characterizing and categorizing certain events as high-risk or low-risk. Beare would repeatedly single out and profile African American students and events as "problems" even if they were low-risk by nature and instruct Plaintiff Moore to make sure the African American students *knew the rules*. At the same time however, even the "high-risk" events being planned by Caucasian students would not be addressed with similar concern or instructions. Plaintiff Moore was being instructed to treat these groups of students different based on their race.

17. At the same time, Beare, using his authority over event operations, would regularly sabotage Plaintiff Moore's efforts as Director of Event Services by making negative comments about his abilities and by intentionally providing inadequate staffing during events that were scheduled by African American students.

18. With inadequate staffing promulgated by Beare, Beare would assume that something was going to go wrong at events sponsored and primarily attended by African Americans and he would request that the Department of Public Safety be present, which would knowingly create an atmosphere of discord when there wasn't one, or result in unwarranted outcomes.

19. Furthering his outward animus towards African American students at WMU and other minorities, Beare would only complain to Plaintiff Moore about the cleanup required after functions involving African American students and groups, and would refer to Asian American students as the "crazy Asians."

20. The environment created by Beare's comments and his discriminatory conduct caused Plaintiff Moore to take on additional duties and responsibilities to ensure that WMU's catering and events department and events ran properly despite Beare's intentional acts to sabotage the success of certain events ran by African American students.

21. Beare's discriminatory profiling and disdain for non-Caucasian students was a pattern and practice that occurred over several years.

22. Around March/April 2016, Plaintiff Moore submitted written complaints to Defendant WMU regarding the racial profiling of student events and racially derogatory comments made by the Assistant Director of Operations, Mitchell Beare.

23. Defendant WMU was aware of the verbal and written complaints made by Plaintiff Moore and other co-workers about Beare's behavior yet failed to take appropriate actions to remedy his conduct and provide a safe environment for students, faculty, and staff.

24. In fact, the Human Resources Department, the Office of Diversity and Inclusion, and/or the Institution Equity Department of Defendant were all aware of Mr. Beare's racially discriminatory conduct and behavior due to the complaints made over the years.

25. Instead of taking any disciplinary action whatsoever against Beare, it is believed WMU recommended that Beare take diversity training. WMU did not follow up on their recommendation and it is believed that Beare never voluntarily participated in training.

26. When Beare was finally required to attend a diversity and inclusion training initiative for faculty and staff, he took that occasion to further retaliate against Plaintiff Moore in a very public setting.

27. On Friday, August 25, 2017, Mitchell Beare finally did attend a WMU Diversity and Inclusion meeting. At the training meeting, Beare walked up behind Plaintiff Moore who was seated at a table at the front of the room, and hung a looped rope/noose behind Plaintiff Moore's head with the intent of pulling it over his head and around his neck --- which is historically an act of lynching a black man.

28. This racially charged act was done in front of other WMU colleagues and coworkers.

29. When Plaintiff Moore turned around in his seat and saw that Beare had a noose and was attempting to bring the noose up over his head, he was horrified.

30. Plaintiff heard another employee say to Mr. Beare, "No… you can't do that!"

31. Surprisingly, even after Beare's inappropriate and racially charged actions, the training session proceeded. Plaintiff Moore tried to make it through the meeting, but was so horrified and shaken by the incident that he had to excuse himself from the meeting.

32. On Monday, August 28, 2017, other coworkers told Plaintiff Moore that they saw Beare making the noose behind his head.

33. Plaintiff Moore reported the incident to his supervisor and indicated that he did not feel safe working around Mitchell Beare. Plaintiff Moore informed his supervisor that he needed to take some time off from work as he could not understand how someone who had a known history of racially hostile behavior, and aggressive and violent conduct, was allowed to continue to work at WMU and create a dangerous and threatening environment for him.

34. An investigation was conducted by Defendant WMU's Office of Institutional Equity.

35. Several individuals present at WMU's Inclusion and Diversity Training session confirmed that Mitchell Beare made a noose and with a smirk on his face placed it behind Plaintiff Moore's head. They also stated that if Beare had not been stopped, he would have proceeded with placing the noose around Plaintiff's neck.

36. During the investigation, two witnesses stated that the incident should have been investigated as a hate crime.

37. Others corroborated Plaintiff's allegations that Beare would regularly racially profile and target African American groups trying to plan events on campus, and that Beare often stated that he hated when "those groups" were scheduled. And when asked to assist with

events organized primarily by African Americans, Beare would state, "*Not my circus, not my monkeys*."

38. During the investigation, witnesses described Mr. Beare as angry, losing his temper often, throwing things, yelling, kicking objects, hitting walls, and having frequent discussions about his guns and his gun rights. Some of the witnesses became visibly upset just discussing Beare's behavior, and they stated that after witnessing the noose incident they wondered what else Beare might be capable of and feared for their safety.

39. Defendant WMU's investigative report dated October 9, 2017, states that attempts had been made over a period of years to get Mr. Beare to participate in diversity training put on by WMU's Office of Diversity and Inclusion. Mitchell Beare did not comply with WMU's requests.

40. In an October 23, 2017 letter following the investigation into this matter, WMU concluded there was sufficient evidence to support a finding for racial discrimination and that Mitchell Beare had violated the University Non-Discrimination Policy.

41. Sometime around September 2017, Mitchell Beare was allowed to retire from WMU, with benefits.

42. Plaintiff has suffered trauma and the lasting effects of being subjected to ongoing racial discrimination and harassment by Mitchell Beare, and having a noose placed behind his head and neck at a WMU Diversity and Inclusion Training session.

43. Defendant's failure to promptly and effectively address the prior complaints of racial harassment, discrimination, and a hostile work environment caused Plaintiff to be subjected to racial animus that permeated the work environment and emboldened Defendant's Assistant Director of Operations to feel comfortable enough to hold a noose behind Plaintiff's head (simulating a lynching) during Defendant's Diversity and Inclusion training session.

44. Beare's actions were bold, egregious, horrific, racially charged, discriminatory, and created a hostile work environment.

45. Plaintiff believes that similarly situated Caucasian employees were not subjected to this treatment.

46. The harassment and discriminatory actions of Defendant Western Michigan University, by and through its agents, employees, managers and/or assigns, were based in whole or in part on Plaintiff's race.

47. A racially hostile work environment grew from Defendant WMU allowing the racially hostile environment to continue unchecked, thus permitting racially derogatory and demeaning conduct toward Plaintiff (an African American) and African American students to continue regularly during the time Mitchell Beare was permitted to continue his employment with Defendant, contrary to Defendant's stated policies.

48. Defendant WMU created a culture in which Mr. Beare had license to demean and berate Plaintiff, African American students, and other minorities with the security of knowing no significant disciplinary action would occur.

49. The harassment against Plaintiff was unwelcomed and unwanted, and the conduct and communication that was directed at Plaintiff during his employment at Defendant Western Michigan University, by and through its agents, employees, managers and/or assigns, substantially interfered with Plaintiff's employment and fostered an intimidating, hostile, and offensive work environment.

50. Plaintiff complained to WMU about the harassment, and discriminatory conduct however Defendant failed to take prompt, effective, and remedial action regarding Plaintiff's complaints and ultimately treated him less favorably than similarly situated non-African American employees with respect to disciplinary action.

51. Plaintiff was subjected to race discrimination and harassment/hostile work environment in violation of 42 U.S.C § 1981, and the Michigan Elliott Larsen Civil Rights Act.

52. On November 27, 2017, Plaintiff filed a Charge of Discrimination with the MDCR and the EEOC (Charge Nos. 483912 and 23A-2018-00275C respectively), including complaints of discrimination based on race, harassment, and a hostile work environment.

### COUNT I
### DISCRIMINATION
### HARASSMENT - HOSTILE WORK ENVIRONMENT
### 42 U.S.C. § 1981

53. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

54. The actions by Defendant Western Michigan University occurred in whole or in part on account of Plaintiff's race, and on that basis were performed intentionally and in a discriminatory manner as compared to other similarly situated Caucasian employees. Thus, Defendant Western Michigan University, through its managers, employees, agents and/or assigns, violated 42 U.S.C. § 1981.

### STATE LAW CLAIMS - SUPPLEMENTAL JURISDICTION

### COUNT II
### HARASSMENT - HOSTILE WORK ENVIRONMENT (RACE)
### ELLIOTT-LARSEN CIVIL RIGHTS ACT

55. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

56. During the course of Plaintiff's employment with Defendant Western Michigan University, Plaintiff was subjected to the aforementioned unwelcomed derogatory and racially offensive comments and other conduct, including having a noose hung behind his head,

based on Plaintiff's race, by employees, agents, managers, and/ or assigns of Defendant Western Michigan University.

57. The aforementioned unwelcomed derogatory and racially offensive comments and other conduct based on Plaintiff's race had the purpose and/or effect of substantially interfering with Plaintiff's employment and/or creating an intimidating, hostile, and offensive employment environment.

58. Defendant Western Michigan University had both actual and constructive notice their employees, agents, managers, and/ or assigns, were creating a hostile and offensive work environment.

59. Despite having notice of the conduct, Defendant Western Michigan University, failed to adequately investigate and take prompt and/or appropriate remedial action. By said acts, Defendant violated the Elliott-Larsen Civil Rights Act.

60. Defendant further violated the Elliott-Larsen Civil Rights Act in that:

   a. Defendant failed to provide Plaintiff with employment conditions and relationships where he could safely work free from physical, verbal, and mental harassment and/or discrimination based on race;

   b. Defendant failed to comparatively discharge, suspend, reprimand or otherwise discipline employees for their actions of harassment and/or discrimination based on the race of Plaintiff; and,

   c. Defendant otherwise failed to comply with statutory and/or common law.

61. Such conduct has denied Plaintiff equal protection and civil rights guaranteed by the Constitution and laws of the State of Michigan.

## COUNT III
## DISCRIMINATION (RACE)
## ELLIOTT-LARSEN CIVIL RIGHTS ACT

62. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

63. The aforementioned acts by Defendant Western Michigan University, through its employees, agents, managers and/or assigns, constitute discrimination against Plaintiff regarding the terms and conditions of his employment on the basis of his race and on that basis were performed intentionally and in a discriminatory manner as compared to other similarly situated employees, thereby subjecting him to a hostile environment based on race which interfered with his employment. By said acts, Defendant has violated Michigan common and/or statutory law, including specifically the Elliott-Larsen Civil Rights Act, M.C.L. §37.2101 *et seq.*; M.S.A. §3.548(101) *et seq.*

64. Such conduct has denied Plaintiff equal protection and civil rights guaranteed by the Constitution and laws of the State of Michigan.

### DAMAGES

65. Plaintiff realleges and incorporates by reference the allegations contained in the previous paragraphs.

66. As a direct and/or proximate result of the aforementioned actions and inactions by Defendant, Plaintiff sustained injuries including but not limited to, mental anguish, fright, shock, embarrassment, humiliation, mortification, damage to reputation, disruption of personal life, loss of enjoyment of the ordinary pleasures of living, possible loss of earning capacity, and other damages known and unknown.

67. As a direct and/or proximate result of the aforementioned actions and inactions by Defendant, Plaintiff has been deprived of wages, loss of income, earning capacity, and, other damages known and unknown, causing Plaintiff to suffer considerable financial distress and hardship.

WHEREFORE, Plaintiff Smith M. Moore seeks all appropriate damages against Defendant Western Michigan University arising out of law, equity, and fact for each or all of the above counts where applicable and hereby requests that the trier of fact award Plaintiff all applicable damages, including but not limited to compensatory, exemplary, and/or punitive and all other relief arising out of law, equity and fact according to statutory and common law, including interest, costs, and attorney fees.

Respectfully submitted,

Dated: August 24, 2020    By:   /s/ Stephen R. Drew
Stephen R. Drew (P24323)
Adam C. Sturdivant (P72285)
DREW COOPER & ANDING
Attorneys for Plaintiff
80 Ottawa Avenue NW, Suite 200
Grand Rapids, Michigan 49503
Phone: (616) 454-8300
E-mail: sdrew@dca-lawyers.com
E-mail: asturdivant@dca-lawyers.com

## JURY DEMAND

Plaintiff, Smith M. Moore, by and through his attorneys, DREW COOPER, & ANDING, hereby demands a trial by jury on all claims set forth above.

Respectfully submitted,

Dated: August 24, 2020

By:   /s/ Stephen R. Drew
Stephen R. Drew (P24323)
Adam C. Sturdivant (P72285)
DREW COOPER & ANDING
Attorneys for Plaintiff
80 Ottawa Avenue NW, Suite 200
Grand Rapids, Michigan 49503
Phone: (616) 454-8300
E-mail: sdrew@dca-lawyers.com
E-mail: asturdivant@dca-lawyers.com